IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>   v.<br><br>DANIEL KEEN JR.,<br><br>               Appellant. | No. 81364-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

LEACH, J. — Daniel Keen Jr. appeals his convictions for attempted rape of a child in the second degree and communication with a minor for immoral purposes. Keen asserts that law enforcement engaged in outrageous misconduct by choosing the fictitious victim's age of 13. He also challenges the DNA collection fee because the State already collected his DNA. We remand to strike the DNA collection fee, but affirm Keen's convictions.

BACKGROUND

In February 2018, the Washington State Patrol (WSP) conducted a "Net Nanny"[1] online sting operation in Vancouver, Washington by posting a Craigslist advertisement in the "Casual Encounters" section. The advertisement indicated that a young male was seeking a relationship with another male.

---

[1] During "Net Nanny" operations, the WSP investigate crimes of attempted rape of a child, communication with a minor for immoral purposes, and commercial sex abuse of a minor through undercover capacities.

Citations and pincites are based on the Westlaw online version of the cited material.

Keen responded to the advertisement and included nude photographs of himself. WSP Detective Kristl Pohl posed as a 13 year old boy, "Jake," to correspond with Keen. "Jake" told Keen he was 13. Keen responded that "Jake" could get everyone in trouble for talking to him and asked if "Jake" was the police. After "Jake" said he was not the police, Keen stated, "you didn't freak me out I was just covering my ass in case."

Detective Robert Givens then took over as "Jake" and communicated with Keen by text messages. Keen messaged with "Jake" over the next three days and sent sexually explicit messages and nude photos. Keen proposed meeting with "Jake." After "Jake" told Keen his mother was leaving for the night, Keen stated he would come over "if you're absolutely sure that she's gone for the evening I'm taking a big risk coming there." "Jake" responded, "Yeah she's gone for sure. You sure you wanna? I don't want to see you get in trouble." Keen responded he needed to shower first. "Jake" then told Keen to meet him at a 7-Eleven. After Keen sent more sexually explicit text messages about what he was going to do to "Jake," Keen said he was at the 7-Eleven. "Jake" then told Keen to meet him at his house. Keen went to the sting house, knocked on the door, and entered. A police team arrested Keen once he arrived inside the door. He had sex toys, condoms, lubricant, and his cell phone, which contained his communications with "Jake."

The State charged Keen with attempted rape of a child in the second degree and communication with a minor for immoral purposes. After trial, the jury found Keen guilty as charged. Keen appeals.

ANALYSIS

DUE PROCESS CLAIMS

Keen claims the State violated his right to due process by engaging in outrageous governmental misconduct by choosing the age 13 rather than an older age for "Jake."

Due process prevents the police from using the courts to obtain a conviction based on outrageous police conduct.[2] We review whether law enforcement has engaged in outrageous conduct de novo.[3]

Police conduct violates due process when the conduct "shocks the universal sense of fairness."[4] "Public policy allows for some deceitful conduct and violation of criminal laws by the police in order to detect and eliminate criminal activity."[5] Courts reserve dismissal based on outrageous police conduct for only "the most egregious circumstances" and do not provide this remedy each time law enforcement acts deceptively.[6]

When evaluating whether law enforcement engaged in outrageous conduct, we focus on the State's behavior rather than the defendant's predisposition.[7] We evaluate the following factors to decide whether police conduct offends due process: (1) "whether the police conduct instigated a crime or merely infiltrated ongoing criminal activity," (2) "whether the defendant's reluctance to commit a

---

[2] State v. Lively, 130 Wn.2d 1, 18-19, 921 P.2d 1035 (1996).
[3] Lively, 130 Wn.2d at 19.
[4] Lively, 130 Wn.2d at 19.
[5] Lively, 130 Wn.2d at 20.
[6] Lively, 130 Wn.2d at 20.
[7] Lively, 130 Wn.2d at 22.

crime was overcome by pleas of sympathy, promises of excessive profits, or persistent solicitation," (3) "whether the government controls the criminal activity or simply allows for the criminal activity to occur," (4) "whether the police motive was to prevent crime or protect the public," and (5) "whether the government conduct itself amounted to criminal activity or conduct 'repugnant to a sense of justice.'"[8]

Keen claims the State engaged in outrageous conduct when detectives specifically chose "Jake's" age as 13 because "they were aware that this fact would increase the potential sentence to an offence with an indeterminate sentence."[9] He does not address otherwise the factors used to assess whether police conduct is outrageous. When Keen asked Detective Robert Givens why they chose "Jake's" age as 13, he responded, "we want those who are targeting the more vulnerable, and the younger are logically the more vulnerable." So, the police reasonably chose to set the age to 13 to protect younger children from predators seeking younger children and not to "increase the potential sentence" as Keen suggests.

Keen makes no claim that police acted to overcome his reluctance to commit a crime or the crimes for which he was convicted. His own text messages show his awareness of the criminal nature of the conduct he attempted and his desire to commit those crimes.

Keen provides no authority supporting his claim that the State's action of

---

[8] Lively, 130 Wn.2d at 22.
[9] Keen fails to cite anywhere in the record where a trooper states this.

4

choosing the age 13 amounts to outrageous conduct.[10]  The State did not engage in outrageous conduct by setting "Jake's" age at 13.  So, Keen's due process claim fails, and we affirm his conviction.

## DNA COLLECTION FEE

Keen asks this court to strike the DNA collection fee from his judgment and sentence.  He contends, and the State concedes, that State v. Ramirez[11] requires this relief because the State previously collected his DNA.  We accept the State's concession and remand for the trial court to strike it.[12]

## STATEMENT OF ADDITIONAL GROUNDS

First Amendment Violation

Keen asserts the State violated his First Amendment right to free speech "due to freedom of conversation and text" and because it is illegal for law enforcement to record any conversation without his prior knowledge.  Because Keen provides no explanation about how the State violated his First Amendment right to free speech due to freedom of conversation, we do not address this claim.[13]

Keen also claims that it should be illegal for law enforcement to save text message conversations because it is illegal "for law enforcement to record any conversation without the prior knowledge of the person being recorded."  But, the law prevents law enforcement from recording "a private communication or

---

[10] RAP 10.3(a)(6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

[11] 191 Wn.2d 732, 746-50, 426 P.3d 714 (2018).

[12] State v. Land, 172 Wn. App. 593, 605, 295 P.3d 782 (2013).

[13] Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011).

conversation."[14]  Because the detectives were a party to the texting conversations with Keen, the State did not intercept any "private communication" between Keen and a third party.  And, the State did not record the communications.  It preserved them in the form they were sent.  So, the State did not violate statutory privacy rights.

Grand Jury Indictment

Keen next claims the State violated his Fifth Amendment right to be charged by a grand jury indictment. But, the grand jury provision of the Fifth Amendment does not apply to state prosecutions.[15]  So, Keen's claim fails.

Cruel and Unusual Punishment

Keen next claims he received cruel and unusual punishment because he harmed no victim and he never saw documentation showing the jury agreed to the "sentencing review board" and/or "life on parole."

Keen's crimes do not require a real victim.[16] So, this claim fails.  Keen provides no persuasive explanation about how the jury's lack of awareness of the sentencing review board and/or life on parole amounts to cruel and unusual punishment.[17]

Other Claims

Keen also asks whether police are required to reveal their identity when asked.  We do not address this inquiry because it is not a properly asserted ground

---

[14] State v. Racus, 7 Wn. App. 2d 287, 297, 433 P.3d 830 (2019).
[15] State v. Ng, 104 Wn.2d 763, 774-75, 713 P.2d 63 (1985).
[16] State v. Wilson, 158 Wn. App. 305, 242 P.3d (2010); State v. Johnson, 12 Wn. App. 2d 201, 460 P.3d 1091 (2020).
[17] Norcon Builders, LLC, 161 Wn. App. at 486.

for review.[18]

Keen's final ground for review states that a 26-year-old male posing as a minor on Craigslist answered the door when he arrived to meet "Jake." Because a statement of facts without supporting argument does not create a reviewable issue, we do not address it.[19]

CONCLUSION

Because the State reasonably chose "Jake's" age as 13 in order to protect younger children, and because Keen provides no authority supporting his assertion the State engaged in outrageous conduct, his due process claim fails. We affirm Keen's convictions but remand for the trial court to strike the DNA collection fee.

Leach, J.

WE CONCUR:

Andrus, A.C.J.          Mann, C.J.

---

[18] Norcon Builders, LLC, 161 Wn. App. at 486.
[19] Norcon Builders, LLC, 161 Wn. App. at 486.