# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52616-6-II |
| Respondent. | |
| v. | |
| DONALD LEE HOGAN, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Donald Lee Hogan engaged in highly sexualized online communications with someone who he believed was a 13-year-old girl but was actually undercover detectives. He crafted a plan for the girl to travel by bus to a transit center, but when he arrived at the transit center to meet her, he was arrested by law enforcement. Hogan ultimately pleaded guilty to five counts of communication with a minor for immoral purposes.

Hogan appeals his judgment and sentence, arguing that a scrivener's error on the judgment and sentence resulted in a sentence exceeding the statutory maximum; a community custody condition prohibiting him from frequenting places where children tend to congregate unless approved in advance is unconstitutionally vague; and two community custody conditions restricting his access to the Internet and electronic devices are overbroad. In a statement of additional grounds (SAG), Hogan also argues that he was entrapped, the arresting officers lacked probable cause to arrest him, he never received his *Miranda*[1] warnings, and he received ineffective

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

assistance of counsel. The State concedes that the judgment and sentence contains a scrivener's error that inadvertently imposed a sentence exceeding the statutory maximum.

We accept the State's concession. We further hold that the community custody condition prohibiting Hogan from frequenting places where children tend to congregate was not unconstitutionally vague. We accept both parties' request that the community custody condition prohibiting Hogan from possessing electronic devices that can access or record images or videos be stricken because that condition was not crime-related. We hold that the community custody condition prohibiting Hogan from possessing any electronic devices that access the Internet without a monitoring system was not unconstitutionally overbroad. Finally, we conclude that Hogan's SAG arguments lack merit.

Accordingly, we affirm Hogan's convictions and remand to the trial court to correct the scrivener's error and strike the community custody condition addressing devices that can access or record media images or videos from the judgment and sentence.

FACTS

The State charged Hogan with one count of attempted second degree rape of a child and eight counts of communication with a minor for immoral purposes. The underlying facts are not disputed.

Hogan sent a Facebook message to an account belonging to La Luch believing he was conversing with a 13-year-old girl. Hogan began sending sexual messages and asking La Luch to send him erotic pictures. La Luch contacted the National Center for Missing and Exploited Children, which forwarded the report to the local police department for investigation.

Over the next month, undercover detectives continued conversing with Hogan via e-mail while posing as La Luch, a 13-year-old girl. Hogan sent highly sexualized messages including erotic pictures of himself and pictures of sex toys. Eventually, Hogan devised a plan for La Luch to take a bus to meet him. Hogan sent La Luch a detailed itinerary and described the clothing he would be wearing when he picked her up at the transit center. He established a code word so La Luch would know it was him.

When Hogan arrived at the transit center as planned, law enforcement arrested him. After agreeing to waive his *Miranda* rights, Hogan was interviewed by detectives. Although he initially claimed he was at the transit center to use the restroom, Hogan eventually admitted to sending the messages to La Luch, who he believed was 13 years old.

Hogan ultimately pleaded guilty to five counts of communication with a minor for immoral purposes. His guilty plea statement included, "On multiple dates . . . I sent electronic mail messages of a sexual nature to a correspondent that I had reason to believe was 13 years old, and I sent them from my home computer in Kelso in Cowlitz County, Washington." Clerk's Papers (CP) at 23.

After pleading guilty, Hogan filed a motion to withdraw his guilty plea for "failure of his counsel to sufficiently investigate appropriate defenses before pleading him guilty and to avoid a coerced plea statement." CP at 55-56. At the sentencing hearing, Hogan told the trial court he wished to proceed with new counsel. He stated that he believed he was not guilty and he pleaded guilty because he was coerced. The trial court stated, "[B]ased on what I've observed in court, I don't think her representation has been deficient, so I'll deny the request." Verbatim Report of Proceedings (VRP) (Oct. 9, 2018) at 15. Defense counsel told the trial court that she and Hogan

3

had a "strategic [] difference," and Hogan had a "different version of culpability of these offenses."

*Id.*

The parties made a joint recommendation of 60 months of confinement on counts two through five and zero months on count six with three years of community custody on count six. The trial court stated that it intended to impose the recommended sentence. However, the judgment and sentence indicated 36 months of community custody on all counts rather than only count six.

The trial court also imposed the following relevant community custody conditions:

14. Do not possess any electronic devices that can access or record media images or videos, unless authorized by [community corrections officer (CCO)] and treatment provider. Your CCO has access to any device.

15. Do not possess any electronic devices that can access the internet without a monitoring system. Your CCO has access to any device.

. . . .

17. Do not loiter or frequent places where children tend to congregate, including [] but not limited to shopping malls, schools, playgrounds, public pools, skating rinks, and video arcades without prior permission from CCO.

CP at 76.

Hogan appeals.

ANALYSIS

I. SCRIVENER'S ERROR

Hogan argues—and the State concedes—that the trial court made a scrivener's error on his judgment and sentence when it imposed community custody on all five convictions, rather than only the conviction on count six. We accept the State's concession.

"A sentence may not exceed the statutory maximum term set by the legislature." *State v. Hagler*, 150 Wn. App. 196, 203, 208 P.3d 32 (2009). When a defendant is sentenced to a term of

confinement and community custody that has the potential to exceed the statutory maximum for the crime, the appropriate remedy is to remand to the trial court to amend the sentence by reducing the period of community custody so that the sentence does not exceed the statutory maximum. *State v. Boyd*, 174 Wn.2d 470, 472, 275 P.3d 321 (2012).

Here, the statutory maximum is 60 months. RCW 9.68A.090(2); 9A.20.021(1)(c). As a result, the trial court imposed a sentence exceeding the statutory maximum when it sentenced Hogan to 60 months of confinement and 36 months of community custody on counts two through five. The record reflects that this was a scrivener's error. The parties made a joint recommendation that the trial court impose community custody only on count six, and the trial court stated on the record its intent to accept that recommendation. Hogan does not assign error to the imposition of 36 months of community custody on count six. Accordingly, the appropriate remedy is to remand to the trial court to correct the scrivener's error and remove the term of community custody from counts two through five, maintaining it for count six.

## II. COMMUNITY CUSTODY CONDITIONS

The trial court can only impose community custody conditions authorized by statute. *State v. Kolesnik*, 146 Wn. App. 790, 806, 192 P.3d 937 (2008). If the trial court had statutory authority, we review the trial court's decision to impose the condition for an abuse of discretion. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). An abuse of discretion occurs when a trial court's imposition of a condition is manifestly unreasonable. *State v. Hai Minh Nguyen*, 191 Wn.2d 671, 678, 425 P.3d 847 (2018). The imposition of an unconstitutional condition is manifestly unreasonable. *Id*.

A.       Prohibition Against Frequenting Places Where Children Congregate

Hogan argues that the trial court erred by imposing a community custody condition stating, "Do not loiter or frequent places where children tend to congregate, including [] but not limited to shopping malls, schools, playgrounds, public pools, skating rinks, and video arcades without prior permission from CCO." CP at 76. Hogan contends that the condition is impermissibly vague. We disagree.

Vague community custody conditions violate due process under the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution. *State v. Irwin*, 191 Wn. App. 644, 652-53, 364 P.3d 830 (2015). It is an abuse of discretion for a sentencing court to impose an unconstitutionally vague condition. *Hai Minh Nguyen*, 191 Wn.2d at 678. A community custody condition is unconstitutionally vague if either "(1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement." *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018).

1.       "Congregate" and the illustrative list are not impermissibly vague

Hogan argues that the term "congregate" is impermissibly vague and not cured by the illustrative list. We disagree.

We recognize that the parties did not have the benefit of the Washington Supreme Court's opinion in *State v. Wallmuller* when they submitted their briefs in this appeal. 194 Wn.2d 234, 449 P.3d 619 (2019). There, the Supreme Court addressed a nearly identical community custody condition that included a nonexclusive list of prohibited locations and held that it was not

unconstitutionally vague. *Id*. at 245. In so holding, the Supreme Court concluded that the term "'places where children congregate' . . . puts an ordinary person on notice that they must avoid places where one can expect to encounter children, and it does not invite arbitrary enforcement." *Id*. The Supreme Court further concluded that the constitutional vagueness doctrine does not require sentencing courts "to specifically list every place a person convicted of victimizing children is prohibited from loitering." *Id.* at 244.

Like the condition at issue in *Wallmuller*, Hogan's condition contains a nonexclusive list that clarifies areas where children tend to congregate. By providing such a list, an ordinary person can understand the scope of the prohibited conduct. Thus, we reject Hogan's argument that the condition is unconstitutionally vague.

2. "Children" in this context is not vague

Hogan also argues that the community custody condition's use of "children" is impermissibly vague. Br of Appellant at 14. The State did not address this specific argument. We disagree with Hogan.

Hogan relies on *State v. Johnson*, 4 Wn. App. 2d 352, 360, 421 P.3d 969 (2018), where Division Three looked to the relevant criminal statutes implicated in that case and concluded that "children" in a nearly identical community custody condition referred to children under 16 years old. Division Three required the sentencing court to amend the condition on remand to expressly refer to children under 16 years old. *Id*. at 361, n.3.

Even so, in *Wallmuller*, which was decided after *Johnson*, the Supreme Court upheld a nearly identical community custody condition that referred only to "children" without expressly providing an age limit. 194 Wn.2d at 234. And RCW 9.94A.703 permits crime-related community

custody conditions. Even if we were to follow *Johnson*'s reasoning, the relevant criminal statute involving communication with a minor for immoral purposes, the crime at issue here, applies to communications with people under the age of 18, a far more commonly understood definition of "children." RCW 9.68A.011(5). As a result, we conclude that the use of the word "children" without more, does not render this condition unconstitutionally vague.

3.      Prior CCO approval does not invite arbitrary enforcement

Hogan also argues that the community custody condition requirement that he obtain prior permission from his CCO invites arbitrary enforcement. He contends that the requirement of "'prior permission' from his CCO" is functionally equivalent to the phrase "'as defined by the supervising [CCO],'" which was found impermissible in *Irwin*, 191 Wn. App. at 649. Br. of Appellant at 16. We disagree.

The scope of the prohibited conduct is guided by the nonexclusive list that sufficiently clarifies areas where children tend to congregate and is understandable to an ordinary person. Requiring CCO approval before engaging in otherwise prohibited conduct—the scope of which is understandable to an ordinary person—does not invite arbitrary enforcement. *State v. Johnson*, 12 Wn. App. 2d 201, 216, 460 P.3d 1091 (2020) (holding that requiring prior approval from a CCO to access the Internet did not invite arbitrary enforcement); *see also Wallmuller*, 194 Wn.2d at 245 (holding that a similarly worded condition with a nonexclusive list of "'places where children congregate'" "does not invite arbitrary enforcement" (quoting the relevant condition)).

In sum, the community custody condition restricting Hogan from visiting a place where children tend to congregate without prior approval from his CCO sufficiently defines the

proscribed conduct; does not provide for arbitrary enforcement; and is, therefore, not unconstitutionally vague.

B.      Restrictions On Hogan's Access to the Internet and Electronic Devices

Hogan also argues that the trial court abused its discretion by imposing overbroad conditions restricting Hogan's access to the Internet and electronic devices. The State concedes that community custody condition 14, which prohibits Hogan from possessing any electronic devices that can access or record media images or videos unless authorized by his CCO or treatment provider, is not crime-related and should be stricken. The State acknowledges that the record does not reflect any use of digital devices to record media images, and the purpose of the condition is better accomplished through condition 15. We accept the State's concession and instruct the trial court to strike condition 14 on remand. But we disagree with Hogan that condition 15 is unconstitutionally overbroad.

"A community custody condition is not impermissibly overbroad if it is crime-related." *State v. Lee*, 12 Wn. App. 2d 378, 401, 460 P.3d 701 (2020). "Conditions on a sentence that impose limitations on a fundamental right must be 'sensitively imposed' so that they are 'reasonably necessary to accomplish the essential needs of the State and public order.'" *State v. Aguilar*, 176 Wn. App. 264, 277, 308 P.3d 778 (2013) (quoting *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008)). "A criminal statute that encompasses constitutionally protected speech activities within its prohibitions may be overbroad and violate the First Amendment." *Johnson*, 12 Wn. App. 2d at 214.

Hogan cites *Packingham v. North Carolina*, 137 S. Ct. 1730, 198 L. Ed. 2d 273 (2017), to support his argument. There, the United States Supreme Court held that a North Carolina statute

that made it a felony for a registered sex offender "'to access a commercial social networking Web site where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages,'" impermissibly restricted lawful speech in violation of the First Amendment. *Id.* at 1733 (quoting statute). The Court observed that the modern Internet constitutes one of the most important places for the exchange of views in today's society and cautioned that courts must "exercise extreme caution before suggesting that the First Amendment provides scant protection for access to vast networks." *Id.* at 1736.

Hogan's restriction on possessing electronic devices that can access the Internet without a monitoring system is different from the statute in *Packingham,* which criminalized Internet use by sex offenders. Here, Hogan is not categorically barred from accessing the Internet. Rather, the community custody condition is sensitively imposed in that it simply requires that any of Hogan's devices capable of accessing the Internet be outfitted with a monitoring system and that Hogan's CCO have access to any such device.

Recently, in *Johnson* we upheld an even broader community custody condition that restricted Johnson from using or accessing the Internet unless specifically authorized by his CCO. 12 Wn. App. 2d at 215-16. There, we held that the condition was sufficiently tailored to Johnson's crimes because he was prohibited from using the medium through which he committed his crimes without permission from his CCO. *Id.*[2] Here, condition 15 imposes even fewer limitations on Hogan's free speech activities because he does not need prior approval before accessing the

_____

[2] In *Johnson*, we recognized that Division One of this court recently came to a different conclusion in an unpublished opinion regarding a similar community custody condition in *State v. Forler*, No. 79079-0-I, slip op. at 27-28 (Wash. Ct. App. June 10, 2019) (unpublished), http://www.courts.wa.gov/opinions/pdf/790790.pdf. 12 Wn. App. 2d at 216, n.6.

Internet, so long as the electronic device is outfitted with a monitoring system and his CCO has access.

This limited deprivation of Hogan's interest in freely accessing the Internet is related to Hogan's crimes of communicating with a minor for immoral purposes, which were committed using the Internet. To the extent this condition implicates Hogan's First Amendment rights, the restriction is reasonably necessary to accomplish the essential needs of the State and public order by mitigating the likelihood that Hogan would use Internet-accessible electronic devices to contact and endanger minor children. The restriction also helps to ensure discovery should Hogan engage in similar illegal behavior again.

Hogan also argues that condition 15 is overbroad because it limits his ability to possess devices that cannot be outfitted with monitoring systems. He asserts that such devices are ubiquitous and can include refrigerators, injectable glucose monitors, key finders, breast pumps, home security systems, and automobiles. He contends that given the widely expanded scope of devices that access the Internet, the condition burdens more First Amendment activities than necessary to further the State's legitimate interests. But Hogan provides no authority for his contention that any device that uses the Internet implicates First Amendment protections.

The overbreadth doctrine generally applies to protect the First Amendment's restrictions preventing government from infringing on protected speech or expressive conduct. *See State v. Riles*, 135 Wn.2d 326, 346, 957 P.2d 655 (1998), *abrogated on other grounds by State v. Sanchez Valencia*, 169 Wn.2d 782, 239 P.3d 1059 (2010); *see also State v. Aljutily*, 149 Wn. App. 286, 292, 202 P.3d 1004 (2009). To be considered overbroad, a sentencing condition must reach real

and substantial constitutionally protected conduct relative to the conduct legitimately regulated by the criminal sentencing. *Aljutily*, 149 Wn. App. at 292-93.

Hogan fails to establish how a restriction on possessing devices such as an appliance that connects to the Internet or a glucose pump reaches constitutionally protected expressive conduct. In *Packingham* the Court emphasized that social media provides an important venue for "the exchange of views." 137 S. Ct. at 1735. "A fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more." *Id.* No such speech or expressive conduct is impacted by the inability to possess devices like an appliance that connects to the Internet. Hogan's claim fails.

In sum, to the extent condition 15 restricts Hogan's First Amendment rights, we hold that the condition is reasonably necessary to accomplish the essential needs of the State and is sufficiently tailored to Hogan's crimes.

### III. STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

A.      Entrapment

Hogan entitles his first SAG argument "entrapment," but the nature of his argument is unclear. SAG at 2. He emphasizes his belief that the undercover police officer initiated online contact with him and concludes with "[i]f it's against the law for me to drive over the speed limit that law should apply to everyone on the road." SAG at 2. Although RAP 10.10 does not require an appellant to refer to the record or cite authority, he is required to inform us of the "nature and occurrence of alleged errors." Hogan's first assertion of error is too vague to allow us to identify the issue and we do not reach it.

B.      Probable Cause

Hogan appears to argue that law enforcement lacked probable cause for his arrest. He contends, "When I was arrested the detectives told me that I was under arrest and why I was being arrested without positive proof that I had committed a crime. My arrest was presumptuous in nature." SAG at 2-3. But the record does not support his contention. "Probable cause exists where the facts and circumstances are within the officer's knowledge and the facts and circumstances are such that the officer has reasonably trustworthy information sufficient to warrant a person of reasonable caution to believe that an offense has been committed." *State v. Racus*, 7 Wn. App. 2d 287, 301, 433 P.3d 830, *review denied*, 193 Wn.2d 1014 (2019).

Here, the probable cause statement recounted in detail ongoing communications between Hogan and La Luch, who Hogan believed was a 13-year-old girl. The communications were highly sexual in nature. Hogan devised a plan for La Luch to take a bus to meet him at a transit center in Longview, Washington. Law enforcement observed Hogan arrive at the transit center as Hogan had planned. Accordingly, the facts and circumstances within the arresting officers' knowledge were sufficient to warrant the suspicion of criminal activity, and Hogan's claim fails.

C.      *Miranda* Warnings

Hogan also appears to argue that his rights were violated because the arresting officers did not read him his *Miranda* rights or offer him the opportunity to have an attorney present. But the statement of probable cause states that Hogan agreed to waive his *Miranda* rights before being interviewed by detectives upon his arrest. Hogan's claim fails.

D.      Ineffective Assistance of Counsel

Hogan also argues that he received ineffective assistance of counsel. He contends that his counsel was overburdened with too many cases and failed to provide him with documents he requested. He further alleges that his defense counsel admitted that she felt she was ineffective. We disagree.

To demonstrate that he received ineffective assistance of counsel, Hogan must show both that defense counsel's performance was deficient and the deficient performance resulted in prejudice. *State v. Linville*, 191 Wn.2d 513, 524, 423 P.3d 842 (2018). In the context of a defendant's claim that his defense counsel rendered ineffective assistance during the plea bargaining stage, this test requires the defendant to show that (1) counsel failed to "actually and substantially [assist the] client in deciding whether to plead guilty," and (2) "but for counsel's failure to adequately advise [the defendant], [the defendant] would not have pleaded guilty." *State v. Cameron*, 30 Wn. App. 229, 232, 633 P.2d 901 (1981); *State v. McCollum*, 88 Wn. App. 977, 982, 947 P.2d 1235 (1997). We strongly presume that defense counsel's performance was not deficient. *State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012).

Hogan fails to overcome the presumption that defense counsel was not deficient. The record reflects that Hogan's defense counsel consistently communicated with him regarding the State's plea negotiations and filed motions as Hogan requested. At sentencing, the trial court stated that it had not observed anything to suggest that defense counsel's representation had been deficient.

Moreover, Hogan cannot show that but for counsel's allegedly deficient performance he would not have pleaded guilty. Hogan contends that he only entered his guilty plea because he felt

14

he had no other choice based on his attorney's ineffective assistance. Hogan signed a written plea statement in which he declared that he was freely and voluntarily pleading guilty to five counts of communication with a minor for immoral purposes. When a defendant completes a written plea statement and admits to reading, understanding, and signing it, a strong presumption arises that the plea was voluntary. *State v. Smith*, 134 Wn.2d 849, 852, 953 P.2d 810 (1998). And where, as here, the trial court has inquired into the voluntariness of the plea on the record, the presumption of voluntariness is nearly irrefutable. *State v. Davis*, 125 Wn. App. 59, 68, 104 P.3d 11 (2004). Hogan's claim fails.

Finally, on May 15, 2020, we received an additional pro se filing dated May 10, 2020. We have reviewed the contents and conclude that it also does not establish that reversal of Hogan's conviction is warranted.

## CONCLUSION

In conclusion, we accept the State's concession that the judgment and sentence contains a scrivener's error that inadvertently imposed a sentence exceeding the statutory maximum. We further hold that the community custody condition prohibiting Hogan from frequenting places where children tend to congregate was not unconstitutionally vague. We accept both parties' request that the community custody condition prohibiting Hogan from possessing electronic devices that can access or record images or videos be stricken because that condition was not crime-related. We hold that the community custody condition prohibiting Hogan from possessing any electronic devices that access the Internet without a monitoring system was not unconstitutionally overbroad. Finally, we conclude that Hogan's SAG arguments lack merit.

No. 52616-6-II

Accordingly, we affirm Hogan's convictions and remand for the trial court to amend the judgment and sentence by correcting the scrivener's error and striking community custody condition 14.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

I concur:

Le , C.J.

No. 52616-6-II

MELNICK, J. (dissent in part)—I concur in the majority opinion except I disagree that the use of "children" as part of Donald Lee Hogan's community custody condition is not susceptible to more than one interpretation. For that reason, I respectfully dissent on that issue. I would remand to the trial court to clarify.

One condition of Hogan's community custody prohibits him from frequenting places where children tend to congregate. Hogan pleaded guilty to five counts of communication with a minor for immoral purposes in violation of RCW 9.68A.090(2). That statute uses the term "minor," not child or children. RCW 9.68A.090(2). "Minor" is defined in RCW 9.68A.011(5) as "any person under eighteen years of age."

On the other hand, RCW 9A.44.079, rape of a child in the third degree, and RCW 9A.44.089(1), child molestation in the third degree, criminalize sexual intercourse and sexual contact with people under the age of sixteen. But RCW 9A.44.190(2) defines "child" as "a person under the age of eighteen" for purposes of criminal trespass against children crimes. This definition is consistent with the definition of a "child" used in RCW 26.44.020(2) regarding domestic relation cases.

Because our legislature has not made it clear what age limit is encompassed in the word "children," and I cannot discern the meaning from the pleadings in this case, I would remand for the court to clarify.

Melnick, J.
_____
Melnick, J.

17